IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LUCAS B. HORTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:25-cv-2371-E-BN |
| | § | |
| SOGNO TOURS LLC and MYVACATIONDISCOVER, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Lucas B. Horton, proceeding *pro se*, filed this lawsuit against Defendant Sogno Tours LLC and MyVacationDiscover, alleging violations of state laws and a federal statute, the Telephone Consumer Protection Act ("TCPA"). *See* Dkt. No. 3.

United States District Judge Ada Brown referred this action to the undersigned United State Magistrate Judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference. *See* Dkt. No. 1.

Sogno Tours moved to dismiss Horton's complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. *See* Dkt. No. 10. Horton filed a response and objection to the motion. *See* Dkt. No. 13. And Sogno Tours replied. *See* Dkt. No. 14.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should grant the motion to dismiss [Dkt. No. 10] and

dismiss the claims against Sogno Tours for lack of personal jurisdiction.

## Legal Standards

"[A] federal district court's authority to assert personal jurisdiction in most cases is linked to service of process on a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting FED. R. CIV. P. 4(k)(1)(A)).

Where a nonresident defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing that the court has jurisdiction over the nonresident. *See Monkton Ins. Servs., Ltd. v. Ritter,* 768 F.3d 429, 431 (5th Cir. 2014); *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).

This defense "exists to ensure fairness to defendants and to protect federalism." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 320 (5th Cir. 2021) (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980)).

Consistent with these values,

> a defendant must have "fair warning" that his activities may subject him to another state's jurisdiction. That warning permits the defendant to "structure its primary conduct to lessen or avoid exposure to a given State's courts." The limits on specific jurisdiction also "ensure that States with little legitimate interest in a suit" cannot wrest that suit from "States more affected by the controversy."

*Id.* (quoting *Ford Motor*, 141 S. Ct. at 1025).

If the court rules on the defense without an evidentiary hearing, "the plaintiff

bears the burden of establishing only a prima facie case of personal jurisdiction." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (quoting *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018)). And the Court will "accept the plaintiff's uncontroverted, nonconclusional factual allegations as true and resolve all controverted allegations in the plaintiff's favor." *Id.* (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001) (per curiam)).

A federal district court may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state permits the exercise of personal jurisdiction over the defendant and (2) the exercise of jurisdiction by the forum state is consistent with due process under the United States Constitution. *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009).

"As the Texas long-arm statute extends as far as constitutional due process allows, [federal courts] only consider the second step of the inquiry." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

Two types of personal jurisdiction may be exercised over a nonresident defendant: general and specific.

"General jurisdiction 'requires continuous and systematic forum contacts and allows for jurisdiction over all claims against the defendant, no matter their connection to the forum.'" *Zoch v. Magna Seating (Germany) GmbH*, 810 F. App'x 285, 288 (5th Cir. 2020) (quoting *In re Depuy Orthopaedics, Inc., Pinnacle Hip Implant*

*Prod. Liab. Litig.*, 888 F.3d 753, 778 (5th Cir. 2018)).

"A court may assert general personal jurisdiction over foreign corporations 'when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State.'" *Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 895 (5th Cir. 2022) (quoting *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017)).

> There are two "paradigm" forums in which a corporate defendant is "at home." They are (1) the corporation's place of incorporation and (2) its principal place of business. Beyond those two "paradigm" forums, there may also be "exceptional cases" where the exercise of general jurisdiction is appropriate because a corporate defendant's operations are "so substantial and of such a nature as to render the corporation at home" in the forum State.

*Id.* (cleaned up).

"But it is 'incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business.'" *Id.* (quoting *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 337 (5th Cir. 2020)).

"This 'at home' analysis also applies to limited liability companies." *Holman's DNA Trucking & Constr., LLC v. Nat'l Liab. & Fire Ins. Co.*, No. 3:21-cv-2653-B, 2022 WL 4843118, at *2 & n.3 (N.D. Tex. Sept. 30, 2022) (citing *Frank*, 947 F.3d at 337-38 n.10).

"Specific jurisdiction, on the other hand, demands a connection between the suit and the forum," *Zoch*, 810 F. App'x at 288 (citing *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F.*, 137 S. Ct. 1773, 1780 (2017)). Accordingly, it "focuses on the relationship among the defendant, the forum, and the litigation." *Seville*, 53 F.4th at

895 (quoting *Walden*, 571 U.S. at 284).

> In evaluating whether due process permits the exercise of specific jurisdiction, [courts in this circuit] consider
>
> > (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.
>
> If the plaintiff establishes the first two prongs, the burden shifts to the defendant to make a "compelling case" that the assertion of jurisdiction is not fair or reasonable.

*Carmona*, 924 F.3d at 193 (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006); citation and footnote omitted).

"For there to be minimum contacts, a defendant must have 'purposefully availed himself of the benefits and protections of the forum state' 'such that he should reasonably anticipate being haled into court there.'" *Id.* (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007), then *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting, in turn, *World-Wide*, 444 U.S. at 297)).

This "constitutional touchstone" "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 474, 475 (cleaned up). "That is, the plaintiff cannot supply 'the only link between the defendant and the forum.'" *Carmona*, 924 F.3d at 924 (quoting *Walden*, 571 U.S. at 285). "Rather, jurisdiction is proper only where the 'defendant himself' made deliberate contact with the forum." *Id.* (quoting *Walden*, 571 U.S. at 284 (quoting, in

turn, *Burger King*, 471 U.S. at 475)).

"Where a court finds it lacks personal jurisdiction, it may dismiss the action" under Rule 12(b)(2). *Herman v. Cataphora, Inc.*, 730 F.3d 460, 466 (5th Cir. 2013).

**Analysis**

Horton does not allege that Sogno Tours is "at home" in Texas. So specific jurisdiction is the question before the Court – that is, whether Sogno Tours made deliberate contact with Texas limited to Horton's current allegations.

Because the Court considers this question without an evidentiary hearing, Horton's burden is to establish just a *prima facie* case. *See, e.g., NetKnowledge Techs., L.L.C. v. Baron Capital V, Inc.*, No. 3:02-cv-2406-M, 2003 WL 23201333, at *2 (N.D. Tex. July 24, 2003); *see also Horton v. Palmer Admin. Servs., Inc.*, No. 3:20-cv-3526-X-BN, 2021 WL 8014654, at *4 (N.D. Tex. June 8, 2021) ("[A]t this stage, Horton's 'burden is to allege a plausible set of facts establishing jurisdiction.'" (quoting *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012) (citing, in turn, *Davis v. United States*, 597 F.3d 646, 649-50 (5th Cir. 2009)))).

Horton alleges that the Court has specific personal jurisdiction over Sogno Tours because it "do[es] business in Texas and charge[s] Texas consumer's credit cards for vacations." Dkt. No. 3 at 2. Specifically, he alleges instead that Sogno Tours's agents – "Beachexpressinternational.com" and "My Vacation Discover" – called him in violation of the TCPA. *Id.* at 7, 9. And he contends that this purported agency relationship allows the Court to assert personal jurisdiction over Sogno Tours. *See* Dkt. No. 13 at 5-11.

But Sogno Tours argues that it does not have a relationship with either of these entities. *See* Dkt. No. 10 at 8. It contends that Sogno Tours and Beach Express International are unrelated entities, *see* Dkt. No. 10-1 at 3, that Sogno Tours and My Vacation Discovery are also unrelated entities, *see id.*, that it did not oversee or manage any of the third parties who contacted Horton, *see id.*, and that Beach Express International's legal representative have denied any relationship with Sogno Tours, *see id*. at 12.

> "The actions of an agent may establish minimum contacts over a principal." *McFadin*, 587 F.3d at 761. "As such, a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014) (citing *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 112 (1987)). Under Texas law, in order to prove agency, "evidence must establish that the principal has both the right: (1) to assign the agent's task; and (2) to control the means and details of the process by which the agent will accomplish that task." *Indian Harbor Ins. Co. v. Valley Forge Ins. Grp.*, 535 F.3d 359, 364 (5th Cir. 2008). An agency relationship must be affirmatively established and not presumed. *See Coffey v. Fort Wayne Pools, Inc.*, 24 F. Supp. 2d 671, 677 (N.D. Tex. 1998).

*Horton v. SunPath, Ltd.* No. 3:20-cv-1884-B-BH, 2021 WL 982344, at *4 (N.D. Tex. Feb. 16, 2024) (citations altered), *rec. adopted*, 2021 WL 977065 (N.D. Tex. Feb. 16, 2021); *accord Rogers v. Nat'l Car Cure, LLC*, 636 F. Supp. 3d 762, 768 (S.D. Tex. 2022).

The same is true in a TCPA case. *See Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 777 (N.D. Ill. 2014) (citing *In re Joint Pet. filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6582 ¶ 28 (2013) (finding that a "seller may be held vicariously

liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers).”)).

In support of his theory, Horton alleges that, as a result of telemarketing calls, he “purchased a vacation package from Eric Hill, whose email was reservations20@beachexpressinternational.com.” Dkt. No. 3 at 7. And he alleges that “Defendant charged the Plaintiff’s credit card” under the business name “Hotel Payment.” *Id.* at 8. He further alleges:

> The only way the Plaintiff was able to connect the Defendant to the calls was due to a mistake made by the caller, most likely because of his desire for the commission on the sale. The first time the Defendant tried to charge the Plaintiff’s credit card, it was denied for fraud reasons. After that, the Plaintiff did not need the charge to go through, so he hung up, saying that couldn’t complete the sale. He was called back immediately by the same guy at the number 877-841-1429, which is the number for the Defendant. Yet, despite the Plaintiff telling the caller to hold off, the shady people at VacationVIP ran the Plaintiff’s card again, with the sale going through on the second attempt.
>
> A woman who filed the LLC paperwork in Arizona for Sogno LLC, Eliabeth Hale, has tried to place blame for the calls on m[yv]acationdiscover.com when she wrote this to the Plaintiff in an email, “We did more research and determined that the package you booked was not with SognoTours LLC. Sogno Tours LLC uses the same marketing agency as MyVacationDiscover, the Company that you acquired the Vacation Package Certificate from. We heard back from the Marketing Agency today, and they followed up with MyVacationDiscover. Please call their Customer Service Team at 1.866.692.5065.”
>
> The Plaintiff called that number but hung up when a live caller didn’t answer. All other efforts to locate a company by that name have failed. Also it is pretty convenient that 2 unrelated companies, one of which has no digital paper trail at all, share the same marketing company. Regardless, her response smacks of the kinds of lies told by companies that violate the TCPA.
>
> However, the Plaintiff must have struck a nerve with the Defendant, because when he called 877-841-1429 on 9/3/2025 from his phone, he got a message saying the number is not recognized. Yet, when

> he called from a different phone number, the number worked just fine. The same thing happened with the 966-692-5065 number. Which is interesting considering that the Defendant claims that My Vacation Discover was behind the calls, yet, the Plaintiff has been blocked from calling My Vacation Discover when he has been dealing with representatives from Sogno, LLC about these calls. Why would My Vacation Discover block the Plaintiff when he hasn't even been in contact with them? It is because Sogno, LLC is My Vacation Discover.
>
> The Plaintiff called 877-841-1429 on 9/3/2025 from a different phone number. When he spoke to someone and gave her the Certificate Number of the vacation package he purchased, the woman put the Plaintiff on hold for 3 minutes after sounding kind of confused at what she was seeing on her computer screen. The [Plaintiff] was then hung up on when she picked the call back up. The Plaintiff called back and was just left on hold. The Plaintiff has only dealt with the Defendant about these calls. How does My Vacation Discover know there is a problem if they are not the Defendant?

*Id.* at 8-9.

Horton's allegations are speculative and do not provide sufficient facts from which to find an agency relationship between Sogno Tours and the alleged callers, such as Beach Express International and My Vacation Discover. And Horton's own allegations undermine his agency theory.

The vacation package Horton purchased makes no mention of Sogno Tours. Rather, Horton alleges that he purchased a vacation package from the other entities and that his card was charged under the business name "Hotel Payment." *Id.* at 8. Horton's allegations merely speculate that Sogno Tours is behind the transactions.

Horton's allegation that he was called back from a number connected to Sogno Tours is undermined by his additional allegation that Sogno Tours and My Vacation Discover employ the same marketing agency. *See id.* at 8. And, insofar as Horton

contends that My Vacation Discover could not have obtained knowledge of his transactions or reports without being a cover for Sogno Tours, his theory is contradicted by his allegations that he called My Vacation Discover and that Sogno Tours alerted My Vacation Discover through their shared marketing company. *See id.* at 8-9.

And, in any case, although he describes My Vacation Discover as "know[ing] there was a problem," the alleged facts summarizing his last phone call with My Vacation Discover do not demonstrate knowledge of Horton's report. *Id.* at 9. For isntance, Horton alleges that the woman on the phone "sound[ed] kind of confused." *Id.*

Horton's theories are not sufficient to allege an agency relationship between Sogno Tours and any other entity named in the complaint. *Cf. Horton v. SunPath, Ltd.*, No. 3:23-cv-631-E-BN, 2023 WL 90585147, at *5 (N.D. Tex. Dec. 6, 2023) (finding agency relationship where plaintiff alleged that he "purchased warranties from SunPath because of calls that he received from third parties in Texas"), *rec. adopted*, 2024 WL 25085 (N.D. Tex. Jan. 2, 2024); *Palmer*, 2021 WL 8014654, at *7 (finding agency relationship where plaintiff alleged that "on the next call, the third party knew that he had purchased a warranty from Palmer and therefore h[u]ng up on him").

In his response to the motion to dismiss, Horton requests jurisdictional discovery to prove the link between Sogno Tours and the calls he received. *See* Dkt. No. 13 at 4 ("As a result, the Plaintiff should be able to utilize Jurisdictional Discovery

to uncover evidence that supports the claims he can't prove at this stage despite a large amount of evidence that Sogno was responsible for the calls.").

Federal courts "will not authorize a 'jurisdictional fishing expedition' based on a plaintiff's general averments that more discovery will prove our jurisdiction." *Johnson*, 21 F.4th 314, 326 (5th Cir. 2021) (quoting *Bell Helicopter Textron, Inc. v. Am. Eurocopter, LLC*, 729 F. Supp. 2d 789, 798 (N.D. Tex. 2010)).

"But '[i]f a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained.'" *Getagadget, L.L.C. v. Jet Creations, Inc.*, No. 19-51019, 2022 WL 964204, at *5 (5th Cir. Mar. 30, 2022) (per curiam) (quoting *Toys 'R' Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003); citing *Embry v. Hibbard Inshore, L.L.C.*, 803 F. App'x 746, 749 (5th Cir. 2020) (per curiam)).

And multiple federal courts, including district courts in this circuit, "have ruled on jurisdictional discovery requests first raised in response to a motion to dismiss." *Id.* (collecting cases).

However raised, the key consideration remains "whether the requesting party has made specific allegations that the evidence it seeks is likely to support a finding of jurisdiction." *Id.* at *6 (citations omitted); *compare, e.g., Cano v. Assured Auto Grp.*, No. 3:20-cv-3501-G, 2021 WL 3036933, at *9-*10 (N.D. Tex. July 19, 2021) (concerning the possibility of establishing personal jurisdiction through agency), *with*

*Johnson*, 21 F.4th at 326 ("Johnson has not met his burden. He has not alleged specific facts that discovery will prove. Instead, he says that discovery would determine 'the extent' of the activities that we already have said cannot support jurisdiction. We see no reason to confirm Johnson's allegations with discovery when they cannot sustain our power as a matter of law." (citation omitted)).

Considering these standards, Horton has not shown that he is entitled to jurisdictional discovery.

Horton contends that an "agency relationship will be exposed between the callers and Sogno in this situation if [j]urisdictional [d]iscovery is allowed." Dkt. No. 13 at 6. But his purported agency theory is not based on facts sufficient to persuade that Sogno Tours has an agency relationship between any of the entities mentioned in the complaint. And Sogno Tours disputes any connection between itself and the calls received, or products purchased, by Horton. *See* Dkt. No. 14 at 5-8; *cf. Horton v. SunPath, Ltd.*, No. 3:23-cv-631-E-BN, 2023 WL 3807043, at *4 (N.D. Tex. June 1, 2023) (allowing jurisdictional discovery in light of undisputed alleged that car warranty purchased from third-party callers was administered by defendant).

And, so, Horton fails to show that Sogno Tours has an agency relationship with any of the entities that contacted him.

Because Horton has not made a preliminary showing of personal jurisdiction, he is not entitled to jurisdictional discovery. *See Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005). And the Court need not allow a plaintiff to conduct a jurisdictional "fishing expedition" seeking facts to support a claim of

personal jurisdiction. *See Best Little Promohouse in Tex. LLC v. Yankee Pennysaver, Inc.*, No. 3:14-cv-1824-BN, 2014 WL 5431630, at *8 (N.D. Tex. Oct. 27, 2014).

And, so, the Court should dismiss this case for lack of personal jurisdiction.

**Recommendation**

The Court should grant Defendant Sogno Tours LLC's motion to dismiss [Dkt. No. 10] and dismiss Plaintiff Lucas Horton's claims against Sogno Tours without prejudice for lack of personal jurisdiction.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 14, 2026.

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE